## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 23 2015, 8:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry T. Bass, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | September 23, 2015 <br><br> Court of Appeals Case No. <br> 63A01-1502-CR-72 <br><br> Appeal from the Pike Circuit Court <br><br> The Honorable Jeffrey L. Biesterveld, Judge <br><br> Trial Court Cause No. <br> 63C01-1406-FD-238 |

**Mathias, Judge.**

[1] Larry T. Bass ("Bass") appeals the order of the Pike Circuit Court revoking his probation and ordering him to serve the remainder of his sentence at the Indiana Department of Corrections ("DOC"). On appeal, Bass presents two

issues, which we restate as: (1) whether Bass's waiver of counsel was knowing and intelligent, and (2) whether the trial court abused its discretion in ordering Bass to serve the remainder of his sentence at the DOC.

We affirm.

## Facts and Procedural History

On December 8, 2010, Bass pleaded guilty to Class B misdemeanor battery and was sentenced to six months suspended to probation. The trial court ordered that this sentence be served consecutively to another sentence Bass was serving.

While he was on probation, Bass was charged with Class D felony failure to register as a sex offender. Because of this new offense, the State also alleged that Bass violated the terms of his probation.

The trial court held a plea hearing on July 15, 2014, at which Bass indicated that he wished to plead guilty to the Class D felony and admit to the probation violation. Before accepting the plea, the following colloquy occurred:

> [COURT]: And I have in front of me this Waiver of Rights and Plea Agreement and it purports to have your signature. Did you, in fact, sign that document?
>
> [BASS]: Yes, Your Honor.
>
> [COURT]: Did you read it before you signed it?
>
> [BASS]: Yes sir.
>
> [COURT]: How far did you go in school?
>
> [BASS]: I completed eleventh grade. But I, I earned my G.E.D.

[COURT]: Okay. So you have no difficulty reading, writing, understanding the English language?

[BASS]: No, Your Honor.

[COURT]: And this agreement calls for you to plead guilty to Count I, Failure to Register as a Sex Offender, in the new case, FD-238 and to enter an admission in regards to your probation, in Cause FC-241, based upon the new charge. Do you understand that?

[BASS]: Yes, Your Honor.

* * *

[COURT]: **Both of these cases, you have a right to appear as you are today without an attorney. You have the right to hire an attorney. If you cannot afford an attorney at any stage of the proceedings, the Court would appoint an attorney for you. And do you understand that?**

[BASS]: **Yes, Your Honor.**

[COURT]: **And you understand that an attorney would possess skills that you don't possess as far as understanding the rules of evidence, how to deal with cross- examining witnesses, all that that comes with being a lawyer. Do you understand that?**

[BASS]: **Yes, Your Honor.**

[COURT]: **Still your desire today, to proceed without an attorney?**

[BASS]: **Yes.**

[COURT]: Have you had any alcoholic beverages today?

[BASS]: No, Your Honor.

[COURT]: Are you taking any medication?

[BASS]: No, Your Honor.

| [COURT]: | Do you feel like you're thinking clearly and you fully understand these proceedings? |
| [BASS]: | Yes, Your Honor. |
| [COURT]: | Have you, or anybody else close to you, been forced or threatened to cause you to plead guilty and enter this admission here today? |
| [BASS]: | No, Your Honor. |
| [COURT]: | Is the plea of guilty that you're making and the admission that you're making, free and voluntary acts of your own choosing? |
| [BASS]: | Yes, Your Honor. |

Tr. pp. 4-7 (emphasis added).

[6] After further advising Bass regarding the rights he would give up by pleading guilty, Bass reiterated his desire to plead guilty, and the trial court accepted the plea. The trial court found that Bass had violated the terms of his probation by failing to report a change of address and by committing another crime. The court ordered Bass to serve 180 days executed.

[7] The court also found that Bass had committed the crime of Class D felony failure to register as a sex offender. Pursuant to the plea agreement, the trial court sentenced Bass to two years, with one year executed and one year suspended to probation. The trial court also ordered that the executed portion of the sentence be served in community corrections at the Wabash Valley Regional Community Corrections/Work Release Program ("Wabash Valley Community Corrections"). At the end of the hearing, the trial court warned Bass that the court was "going to give you another chance at probation. If you

violate these terms, you know how that works now. The State will be back in here asking that you serve the balance of this sentence." Tr. pp. 15-16.

[8] However, Bass did not heed the trial court's warning. On December 11, 2014, Wabash Valley Community Corrections filed a notice of community corrections violation, alleging that Bass had failed a drug screen, possessed paraphernalia, possessed contraband, ate a cigarette, and acted in an aggressive manner toward a staff member. The following day, the State filed a motion to revoke Bass's probation.

[9] At the December 17, 2014 initial hearing, the trial court again notified Bass of his right to counsel and of his right to self representation. After explaining the nature of a revocation hearing to Bass, the following exchange occurred:

> [COURT]: You have the right to appear as you are today without an attorney. You have the right to hire an attorney. If you cannot afford an attorney, the Court would appoint an attorney for you. Do you understand these rights?
>
> [BASS]: Yes, Your Honor.
>
> [COURT]: How do you intend on, in proceeding in these matters? Are you going to represent yourself and try to work this out with the State? Are you going to hire an attorney? Are you going to ask the Court to appoint one?
>
> [BASS]: I'd rather represent myself and, just talk to the Prosecutor.
>
> [COURT]: Okay. I'll advise you that that's not a permanent waiver. If at any point in time, you change your mind, you can always take up the matter of counsel

with the Court. You understand that? You always
have a right to an attorney.

[BASS]:       Yes.

Tr. p. 21.

[10]     At the revocation hearing held on January 21, 2015, Bass represented himself.
The State presented one witness, Officer Dusty Baize from Wabash Valley
Community Corrections. Bass cross-examined Baize, but did not present any
evidence. Bass argued that his probation could not be revoked because he had
not yet begun his probationary term.[1] He also claimed that his bail was
excessive and that he was subject to cruel and unusual punishment. The court
found that Bass violated his probation by committing the additional crimes of
possession of marijuana and possession of paraphernalia.

[11]     With regard to his sentence, Bass argued that he should serve part of his
executed sentence in jail, then be released to probation. Bass argued that he was
not a "bad person." Tr. p. 61. He admitted to using marijuana "to escape what
they were doing to me," but claimed that, if he were to be released, he wouldn't
have to "deal with people who are mean to me." *Id*. at 61-62. The trial court

---

[1] The trial court correctly noted that Bass's argument in this regard was misplaced, as probation may be
revoked even before a defendant begins probation. *See Rosa v. State*, 832 N.E.2d 1119, 1121 (Ind. Ct. App.
2005).

rejected Bass's argument and ordered his probation revoked and that he serve the remainder of his sentence in the custody of the DOC.[2]

[12] At that point, Bass exclaimed, "I want a lawyer." *Id*. at 66. The trial court advised Bass of his right to appeal and to have counsel appointed for purposes of appeal. Bass then stated, "I want a lawyer for this. Since it's not done and over with." *Id*. at 67. The trial court explained, "It is done and over with . . . except for you may appeal or file a motion to correct error." *Id*. Obviously regretting his choice to proceed *pro se*, Bass stated, "This is illegal. I want a lawyer. Please. Don't sentence me to prison. Please give me a lawyer. I don't understand." *Id*. at 68. The court responded, "I just appointed you an attorney. The attorney's information is there. Call the attorney. Talk to the attorney about your case." *Id*. Bass now appeals.

## I. Waiver of Right to Counsel

[13] Bass first claims that his waiver of his right to counsel was not knowingly and intelligently made. A probationer is entitled to certain due process protections before probation can be revoked, including the right to counsel. *Hodges v. State*, 997 N.E.2d 419, 421 (Ind. Ct. App. 2013) (citing Ind. Code § 35-38-2-3(f) ("The person [alleged to have violated probation] is entitled to confrontation, cross-examination, and representation by counsel.").

---

[2] The trial court gave Bass credit for 84 days he served in jail and 149 days on work release. Appellant's App. p. 43.

On appeal, we review a trial court's finding that a defendant waived his right to counsel *de novo*. *Jackson v. State*, 992 N.E.2d 926, 932 (Ind. Ct. App. 2013), *trans. denied*. Implicit in the right to counsel is the corollary right to self-representation. *Id*. However, before a defendant waives his right to counsel and proceeds *pro se*, the trial court must determine that the defendant's waiver of counsel is knowing, voluntary, and intelligent. *Id*. (citing *Jones v. State*, 783 N.E.2d 1132, 1138 (Ind. 2003)).

When a defendant asserts his or her right to proceed *pro se*, the trial court must "acquaint the defendant with the advantages to attorney representation and the disadvantages and the dangers of self-representation." *Id*. Our supreme court has stated that the trial court has no specific "talking points" it must follow when advising a defendant of the dangers and disadvantages of proceeding without counsel; instead, the trial court need only come to a considered determination that the defendant is making a knowing, voluntary, and intelligent waiver of his or her right to counsel. *Id*. (citing *Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind. 2001)).

Our supreme court has adopted four factors for trial courts to consider when determining whether a defendant has knowingly, voluntarily, and intelligently waived his right to counsel: (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence into the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed *pro se*. *Id*. (citing *Poynter*, 749 N.E.2d at 1127-

28). In making this analysis, the trial court is in the best position to assess whether the defendant has made a knowing, voluntary, and intelligent waiver, and the trial court's finding will most likely be upheld if the trial court has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion. *Id.* (citing *Poynter*, 749 N.E.2d at 1128).

Here, Bass admits that the warnings given to him by the trial court during the first hearing on July 15, 2014 were sufficient. *See* Appellant's Br. p. 7 ("The extent of the court's inquiry during the proceedings on his underlying case were sufficient[.]"). However, Bass argues that the subsequent inquiries were insufficient. He notes that, during the initial hearing on the petition to revoke probation, the trial court asked Bass if he intended to hire an attorney or if he wished to have an attorney appointed for him. Bass replied that he would "rather represent myself, and just talk to the Prosecutor." Tr. p. 21. The trial court then informed Bass that his waiver of the right to counsel was not permanent and that he could request an attorney at any time, and Bass indicated that he understood that he "always had the right to an attorney." *Id.*

If the trial court's inquiry at the initial hearing on the petition to revoke were the only thing giving us insight into the validity of Bass's waiver of the right to counsel, we would agree with him that it was insufficient. However, when we determine the validity of the waiver of counsel, we may consider the advisement given at the earlier hearing, which Bass admits was sufficient. *See Callahan v. State*, 719 N.E.2d 430, 440-41 (Ind. Ct. App. 1999) (holding that defendant's waiver of his right to counsel at second trial was knowing and

intelligent when viewed in context with the warnings given by the trial court before the commencement of the first trial).

[19]     Simply said, Bass was advised that he had the right to counsel and could invoke this right at any time; that if he could not afford counsel, the court would appoint him counsel; and that counsel would have skills and knowledge that Bass would not possess regarding trial procedure and the rules of evidence. Bass is also a literate adult who had attended high school through eleventh grade and obtained his G.E.D. Thus, although Bass did not possess an advanced education, nothing in the record suggests that he was educationally disadvantaged.  Moreover, as a registered sex offender, it is apparent that this was not Bass's first experience with the criminal justice system. Bass, acting without an attorney, managed to negotiate a plea agreement on the underlying charge for failure to register as a sex offender. Under these facts and circumstances, we conclude that Bass's waiver of his right to counsel was knowingly and intelligently made.[3] *See Callahan*, 719 N.E.2d at 441.

## II.  Sentencing

[20]     Bass next claims that the trial court abused its discretion in ordering him to serve the remainder of his sentence in the DOC. It is well settled that probation

---

[3] We reject Bass's claim that his poor performance at the revocation hearing should be used to judge the validity of his waiver of his right to counsel. First, as the State notes, Bass appeared to be relatively well prepared for the hearing; he had prepared a legal argument and cited statutes to the trial court. The fact that he had difficulty cross-examining a witness or in forming objections may indicate that his decision to proceed without counsel was unwise, but it does not mean that his decision was not knowingly or intelligently made.

is a matter of grace and a conditional liberty that is a favor, not a right. *Cooper v. State*, 917 N.E.2d 667, 671 (Ind. 2009), *overruled on other grounds in Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013).[4] The trial court determines the conditions of probation and may revoke upon determining that those conditions were violated. *Cooper,* 917 N.E.2d 671. The sentencing of a defendant following a probation violation is governed by Indiana Code section 35-38-2-3(h), which provides:

> If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:
>
>> (1) Continue the person on probation, with or without modifying or enlarging the conditions.
>>
>> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
>>
>> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

(emphasis added). Thus, under this statute, the trial court has discretion in deciding which option is appropriate under the circumstances of each case. *Johnson v. State*, 692 N.E.2d 485, 488 (Ind. Ct. App. 1998). Indeed, our supreme court has held that "[o]nce a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway

---

[4] Our supreme court in *Heaton* clarified that the allegations of a probation violation must be proven by a preponderance of the evidence, overruling a contrary statement in *Cooper* that revocation of probation would be sustained by probable cause to believe that a probation violation had occurred. *See Heaton*, 984 N.E.2d at 616-17 (citing *Cooper,* 917 N.E.2d at 674).

in deciding how to proceed." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). Accordingly, we review a trial court's sentencing decision following a probation revocation only for an abuse of this discretion. *Sanders v. State*, 825 N.E.2d 952, 957 (Ind. Ct. App. 2005). An abuse of discretion will be found only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Prewitt*, 878 N.E.2d at 188.

[21] Here, Bass argues that his prior misconduct while in community corrections was punished much more leniently: after four incidents of rules violations[5], the Wabash Valley Conduct Adjustment Board took away seventy-five days of good credit time. The fifth rule violation, however, led to the notice of community correction violation, which in turn triggered the State to file the motion to revoke probation that led to Bass's probation being revoked in the case on appeal.

[22] The State argues that Bass's prior disciplinary history at Wabash Valley merely demonstrates that Bass did not respond well to prior showings of lenience, and we agree. Further, the final rules violation that led to the probation revocation was not a minor, technical violation; Bass smoked marijuana in a Wabash Valley restroom, destroyed the evidence, and was found in possession of a

---

[5] Before the Wabash Valley Conduct Adjustment Board, Bass was accused of violating rules on several occasions: on September 14, 2014, Bass was found in possession of a pipe, two rolled cigarettes, and a razor blade; on September 18, 2014, Bass was found in possession of paraphernalia and a small amount of a green, leafy substance that was too small to be seized for evidentiary purposes; on November 17, 2014, Bass was defiant and found in possession of a cigarette lighter and a rolled cigarette; and on December 9, 2014, Bass failed a drug screen.

green, leafy substance. Thus, Bass committed yet another crime at the community corrections center itself.

[23] We further observe that Bass had previously violated the terms of his probation on his previous conviction, which led to his placement in community corrections. Because Bass had not responded to his previous probation and continued to violate the terms of his community corrections placement, we cannot say that the trial court abused its discretion by ordering Bass to serve the remainder of his two-year sentence in the DOC.[6]

## Conclusion

[24] Bass knowingly and intelligently waived his right to counsel, and the trial court did not abuse its discretion by ordering Bass to serve the remainder of his sentence in the DOC.

[25] Affirmed.

Baker, J., and Bailey, J., concur.

---

[6] To the extent that Bass argues that his sentence is disproportionally harsh compared to his violation, we remind Bass that he was not sentenced for his probation violation; he was sentenced for failing to register as a sex offender, which was a Class D felony.